By the Court.—Freedman, J.
The plaintiffs, on three blocks covering twelve acres of ground in Chicago, 111., owned quite an extensive establishment, which was known as Armour & Co.’s property. Ora-the first block stood the ice-house, on the second the packing-house, and on the third the waréhouseThere were fire-walls between the several buildings, but they were all connected by tramways, and on the procurement of the policy in suit they were spoken of as one risk. The warehouse was divided into sections called A, B, and C.
The policy in suit, dated January 6; 1879, purported to insure Armour & Co. against loss or damage by fire for one year to the amount of $8,000 on the three sections into which the warehouse was divided, including certain fixtures and utensils, but covering no-stock or merchandise.
At the trial there was no conflict as to the circumstances under which the policy was obtained, and the evidence clearly established the following facts : ■
The policjr was procured for the plaintiffs by a *362 -broker, John P. Dickinson, who had been employed by the plaintiffs to effect a large line of insurance upon their property, and who throughout acted in the matter as the agent of the plaintiffs. Moreover, the policy in question expressly provided, as part of the contract, that any person other than the assured, who might procure the insurance to be taken by the company, should be deemed the agent of the assured, and not of the company, under any circumstances whatever, or in any transaction relating to the insurance. The policy was issued by the defendant in reliance upon Dickinson’ s representations that the rate of insurance charged by the board of underwriters of Chicago was 75 cents on $100 on the buildings, and $1.25 on the stock contained therein, and that there was already an insurance of $200,000 on the risk, viz. : the buildings known as Armour & Co.’s property. Both representations were material, to the risk to be assumed by the defendant. The representation as tó the amount of insurance already on the buildings was material, because, if true, the defendant, in case of loss, could be held for only its proportionate share ; and the representation as to the regular board-rate was in fact treated by the defendant as so important that the policy was delivered to Dickinson upon the express agreement that it should be null and void in case the said rate was higher. Both representations turned out to be false. Instead of $200,000 prior insurance, there was but $28,000 existing on all the buildings at the time of the issuing of the policy, and the board-rate was $1.25 on the buildings. By its terms, therefore, which, among other things, provided, that any omission to make known every fact material to the risk, or any misrepresentation whatever, either in a written application or otherwise, should render the policy void, the policy ceased to exist. But the defendant did not stop here. As soon as it was ascertained that the board-rate *363 was in fact $1.25, Dickinson was notified to return the policy. ■ The testimony bearing upon this point, as a whole, leaves no doubt that it was a distinct notice to return, and that Dickinson promised to comply with it, though he did not do so. No premium had been paid, and consequently none was to be refunded. Under these circumstances, I am inclined to think that the notice was effective to cancel the policy, even independent of the custom which was shown to exist in New York, that where the broker who procured the risk is notified that the rate will be raised, and he fails to produce the policy for indorsement of the increased rate, the risk is off and the policy canceled. The policy in question expressly provided that the insurance might be terminated at any time, at the option of the company, on giving notice to that effect. Dickinson had not only been the agent of the plaintiffs in procuring the policy, but, at the time the notice was given to him and for some time thereafter, he continued to act as agent for the plaintiffs in the attempt to place $80,000 of insurance on the buildings of the plaintiffs, at a rate two-fifths less than that established by the board of underwriters of Chicago. To show the fact of the continuation of this agency, the letter of Dickinson, of January 28, 1879, was properly received in evidence.'
I can see no merit in any of the exceptions taken, and am of the opinion that the judgment should be affirmed, with costs.
Sedgwick, Ch. J., concurred.